1   James J. Little (SBN 123373)
    J.J. LITTLE & ASSOCIATES
2   1516 SOUTH BUNDY DRIVE
    Suite 312
3   Los Angeles, California 90025
    Tel: (310) 442-8310
4   Fax: (310) 442-8304

5   Attorneys for Plaintiff
    Jamison Law Group LTD, a Nevada
6   corporation, d/b/a CreditCRM,

7

**FILED**

2009 FEB 17  PH 3: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST. G. CALIF.
LOS ANGELES

BY_____

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  Jamison Law Group LTD, a     )   Case Number:
    Nevada corporation, d/b/a    )
12  CreditCRM,                   )
                                 )   CV09-1130 MRP (CTx)
13           Plaintiff,          )
                                 )   **COMPLAINT FOR:**
14                               )
                                 )   1) Copyright Infringement;
15                               )
                                 )   2) Unfair Competition;
16       v.                      )
                                 )   3) False Advertising;
17  DisputeSuite.com LLC, a Florida )
    Limited Liability Company,   )   4) Breach of Contract;
18  Michael Citron, an individual, )
    Brett Ryckman, an individual, and )  5) Interference with prospective
19  DOES 1 through 20,           )      economic relations;
                                 )
20                               )
    Defendants.                  )   **DEMAND FOR JURY TRIAL**
21  _____     )

22

23          Plaintiff Jamison Law Group LTD, doing business as CreditCRM

24  ("CreditCRM" or "Plaintiff"), alleges as follows:

25                   <u>SUMMARY OF ACTION</u>

26      1.      This action has been filed by CreditCRM to combat the

27  unauthorized copying, display, and distribution of certain computer software that

- 1 -
COMPLAINT

Dockets.Justia.com

infringes CreditCRM's copyrighted credit repair software products (collectively, "CreditCRM Software"), as well as other unfair, unlawful and/or fraudulent business practices by defendants.

2.      Defendants in this action are sellers of infringing credit repair software through, but not necessarily limited to, the Internet website of defendant DisputeSuite.com. Defendants have copied, displayed, offered for sale, sold, and distributed in interstate commerce via the Internet and other means of online distribution "DisputeSuite" credit repair software that is substantially similar to CreditCRM Software, all without CreditCRM's authorization. CreditCRM owns the exclusive copyrights in and to the CreditCRM Software.

3.      Defendants' unauthorized copying, displaying, offering for sale, sale, and distribution of the infringing DisputeSuite software threatens to harm and has harmed CreditCRM, by, among other things, depriving CreditCRM of the exclusive right to control the copying, display, distribution, and creation of derivative works based on the CreditCRM Software.

4.      CreditCRM seeks temporary, preliminary and permanent injunctive relief, damages, costs and attorneys' fees as authorized by the Copyright Act of 1976 and California law.

**THE PARTIES**

5.      Plaintiff Jamison Law Group LTD is a Nevada corporation, doing business as CreditCRM ("CreditCRM"), with a principal place of business in Los Angeles, California.

6.      CreditCRM is informed and believes, and on that basis alleges, that defendant DisputeSuite.com LLC ("DisputeSuite") is a Florida limited liability company who does business in, and maintains substantial contacts with, Los Angeles County, California. CreditCRM is informed and believes, and on that basis alleges, that DisputeSuite is not registered to do business in California with

COMPLAINT

the California Secretary of State.

7.     CreditCRM is informed and believes, and on that basis alleges, that defendant Michael Citron ("Citron") is an individual who resides in New Port Richey, Florida. Citron is a co-founder of DisputeSuite and does business in, and maintains substantial contacts with, Los Angeles County, California.

8.     CreditCRM is informed and believes, and on that basis alleges, that defendant Brett Ryckman ("Ryckman") is an individual who resides in New Port Richey, Florida. Ryckman is a co-founder of DisputeSuite and does business in, and maintains substantial contacts with, Los Angeles County, California.

9.     CreditCRM does not know the true names and capacities of the defendants sued herein as Does 1 through 20, and therefore sues those defendants by such fictitious names. CreditCRM will seek leave to amend this Complaint to set forth those defendants' true names and capacities when they have been ascertained. CreditCRM is informed and believes and, on that basis, alleges that each of the fictitiously-named defendants acted as an agent, employee, servant, principal, partner, shareholder, co-conspirator, aider or abettor, or is otherwise responsible for the acts and omissions alleged in this Complaint. Doe defendants 1 through 20 named herein are other individuals or entities that CreditCRM believes joined with defendants in engaging in the wrongful conduct described herein by, among other things, participating in the unauthorized creation of the infringing materials alleged herein, and acted as agents and servants of the other defendants, acted within the scope of their authority as such agents and services of the other defendants, or, in the alternative, approved and ratified acts and omissions of the other defendants.

## JURISDICTION AND VENUE

10.     The Court has original subject matter jurisdiction over this action pursuant to the provisions of the Copyright Act of 1976 ("Copyright Act"), 17

U.S.C. § 101 *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the claims that arise under the laws of the State of California pursuant to 28 U.S.C. § 1367(a).

11.     The Court has personal jurisdiction over defendants, and each of them, who have sufficiently continuous, systematic, and routine contacts with California to establish such jurisdiction. The wrongful acts of defendants alleged herein occurred in and caused injury to CreditCRM in California.

12.     Venue is proper pursuant to 28 U.S.C. § 1400 because defendants, and each of them, may be found in this district, and pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred within this district.

## FACTUAL ALLEGATIONS

13.     CreditCRM is a nationally-known credit repair business opportunity that has made, and continues to make a substantial investment of time, effort and expense in the design, development, testing, and marketing of its widely successful CreditCRM Software, which includes related website displays, databases, user instructions and other associated documents relative to such software products, all created for the purpose of helping consumers raise their credit scores through a systematic process of credit restoration techniques developed by CreditCRM's founder, attorney and national credit repair expert, Edward Jamison, Esq.

14.     CreditCRM Software was first created, published and distributed on or about May 1, 2006, and is the basis for CreditCRM's successful credit repair business.

15.     Building upon the success of the CreditCRM Software, CreditCRM has continued to market and license the CreditCRM Software to hundreds of "clients" across the United States. CreditCRM's client/licensees

include bankers, loan officers, mortgage brokers, real estate agents and others. One such CreditCRM client is defendant Citron.

16. CreditCRM Software, including related website displays, databases, user instructions and other associated documents relative to such software products, contains wholly original materials constituting copyrightable subject matter under the Copyright Act.

17. CreditCRM has complied at all relevant times and in all respects with the Copyright Act related to the CreditCRM Software, including related website displays, databases, user instructions and other associated documents relative to such software products, and has registered the same in full compliance with the Copyright Act.

18. On or about January 28, 2009, CreditCRM registered the CreditCRM Software with the Register of Copyrights via online registration. The online registration form bears the Claim I.D. number 1-2KHOE1 and the Case number 1-155349431. A true and correct copy of the registration form is attached hereto as Exhibit A.

19. On or about January 28, 2009, CreditCRM delivered the deposit, application and fee required for registration of the CreditCRM Software to the Register of Copyrights in proper form.

20. Beginning in or about May 2006, and continuing since the dates of registration of the copyrights for the CreditCRM Software, CreditCRM has published and licensed or transferred licenses to the CreditCRM Software, including related website displays, databases, user instructions, and other associated documents relative to such software products, in interstate commerce.

21. Since the creation of the CreditCRM Software, CreditCRM has remained the sole proprietor of all rights, title and interests in the copyrights associated with the CreditCRM Software, including related website displays,

COMPLAINT

databases, user instructions and other associated documents relative to such software products.

22.　　As a result, CreditCRM owns the exclusive rights to, among other things, reproduce, display, distribute, and create derivative works based on the CreditCRM Software, including related website displays, databases, user instructions and other associated documents relative to such software products.

23.　　In an effort to discourage the unauthorized duplication, display, sale and distribution of its software products, CreditCRM markets and distributes authorized, licensed copies of the CreditCRM Software, including related website displays, databases, user instructions and other associated documents relative to such software products.

24.　　A CreditCRM client typically obtains access to an authorized copy of CreditCRM's Software by entering into a license agreement with CreditCRM. The license agreement entitles CreditCRM's licensee, and the licensee's end user customers, to access and use CreditCRM's Software through a password-protected website link hosted by CreditCRM. A unique website link is created specifically for each authorized licensee.

25.　　In an effort to discourage the unauthorized duplication, display, and/or distribution of CreditCRM Software, CreditCRM requires authorized licensees, among other things, to agree to enter into lawful agreements with the licensee's end user customers that will protect the privacy of information collected from such end users.

26.　　Each authorized licensee of CreditCRM Software must also expressly agree not to use any information obtained from use of the CreditCRM Software "in connection with the designing of a similar database [software] product." The licensee must also agree "not to share any information about CreditCRM with outside entities regarding the work-flow, design and output" of

CreditCRM.

27.     Each CreditCRM licensee must also agree not to "resell any information obtained from CreditCRM or grant access to its [CreditCRM Software] by any third party reseller."

28.     Each CreditCRM licensee must also agree not to "copy, distribute, modify, reverse engineer, or create derivative works based on upon information obtained from CreditCRM," which includes the CreditCRM Software.

29.     Each CreditCRM licensee must also agree not to "sublicense, assign, transfer or grant any permission or license to use, the [CreditCRM Software], [the License Agreement], or any interest therein."

## DEFENDANTS' WRONGFUL CONDUCT

30.     In or about August 2007, defendant Citron approached CreditCRM about licensing CreditCRM's Software.  Citron, a Florida realtor and self-proclaimed "internationally know public speaker and author" and "authority in the financial services industry," represented that he wanted to license the CreditCRM Software for the purpose of setting up his own credit repair business in the New Port Richey, Florida area.

31.     On or about August 28, 2007, Citron entered into a "Private Label Service Agreement" (the "License Agreement") whereby he agreed, among other terms, to the terms set forth above in return for the right to access and use the CreditCRM Software.  Citron also agreed to pay an initial licensing fee of $6450.00, a monthly hosting fee of $295.00/month for up to 30 active end users, and an additional fee of $20.00/month per user for additional users above 30. Citron was given a password-protected website link that allowed him access to the CreditCRM Software.

32.     CreditCRM is informed and believes, and on that basis alleges, that, contrary to his representations, defendant Citron's true motive in licensing

CreditCRM Software was not to set up a credit repair business, but rather to use his access to the CreditCRM Software to allow unauthorized third parties, including defendant Ryckman and other as-of-yet-unidentified individuals, to gain unauthorized access to the CreditCRM Software for the purpose of analyzing and copying the CreditCRM Software and ultimately creating and distributing a competing credit repair software product, all for his own personal gain.

33.     CreditCRM is informed and believes, and on that basis alleges, that beginning in or about August 2007 and continuing thereafter, defendant Citron breached the License Agreement by disclosing information obtained from his use of the CreditCRM Software to unauthorized third parties, including defendant Ryckman and other as-of-yet-unidentified individuals, for the purpose of designing of a competing software product substantially similar to the CreditCRM Software, all for his own personal gain.

34.     CreditCRM is informed and believes, and on that basis alleges, that beginning in or about August 2007 and continuing thereafter, defendant Citron breached the License Agreement by allowing unauthorized third parties, including defendant Ryckman and other as-of-yet-unidentified individuals, access to the CreditCRM Software and by engaging in, and/or inducing others to engage in, efforts to copy, distribute, modify, reverse engineer, or create derivative works based on upon information obtained from CreditCRM, including the CreditCRM Software, all for his own personal gain.

35.     CreditCRM is informed and believes, and on that basis alleges, that beginning in or about August 2007 and continuing thereafter, defendant Citron breached the License Agreement by sharing information about CreditCRM's regarding the work-flow, design and output with unauthorized third parties, including defendant Ryckman and other as-of-yet-unidentified persons or entities, all for his own personal gain.

COMPLAINT

36.     CreditCRM is informed and believes, and on that basis alleges, that beginning in or about August 2007 and continuing thereafter, defendants Citron and Ryckman infringed CreditCRM's copyrights by inducing, engaging and/or working closely with others, including as-of-yet-unidentified software developers and/or programmers, to analyze and copy substantial portions of the CreditCRM Software in order to compete unfairly with CreditCRM by creating and distributing an infringing credit repair software product. Defendants Citron and Ryckman further infringed CreditCRM's copyrights by reproducing, displaying, offering for sale and selling the infringing product through their newly formed company, defendant DisputeSuite.com.

37.     CreditCRM is informed and believes, and on that basis alleges, that beginning in or about August 2007, and continuously thereafter, defendants infringed CreditCRM's copyrights by actively reproducing, displaying, marketing, offering for sale, and selling, in interstate commerce, unauthorized copies of CreditCRM Software in the guise of "DisputeSuite" credit repair software to members of the public through the use of computers, servers, digital devices, electronic mail, various Internet websites, including but not necessarily limited to DisputeSuite.com, and other means of online distribution.

38.     Among other similarities, the software offered by DisputeSuite has a substantially similar design, structure, flow of tasks ("work-flow"), text, and graphical user interface (i.e., "look and feel") to that of the CreditCRM Software.

39.     For example, defendants' infringing software contains a number of work-flow features that are nearly identical, or substantially similar, to features first created by CreditCRM for its software. Indeed, the sequencing and design of the features in defendants' software are so similar to those contained in the CreditCRM Software that they could have only been created by substantial copying. These include, but are not limited to:

COMPLAINT

a. A "letter creation" feature for creating "dispute letters" sent to credit bureaus that uses the substantially similar text and "fields" to those contained in the CreditCRM Software;

b. A "dispute letter content" feature that allows a user to determine whether certain credit dispute items are included in the dispute letters;

c. A "credit bureau selection" feature that allows a user to determine whether the dispute letters are directed to each bureau by "checking the box" next to each credit bureau;

d. A "finalizing letter" feature that allows the user to change the dispute letter template from one credit bureau to another before printing the letter;

e. A "client status update" feature that allows the licensee's end user customers to check the status of their file;

f. A "record" feature that keeps a dated record of all dispute letters sent to the credit bureaus;

g. An "electronic signature" feature that is identical to the same feature first created by CreditCRM;

h. A "time stamping" feature that saves and codes by date and user each and every change to any client record; and

i. A "client viewing page" that allows for the placement of "referral partner" pictures and contact information designed to advertise one or more referral partners to the end user.

40. At no time has CreditCRM authorized defendants to copy, modify, reverse engineer, display, distribute, create derivative works based on CreditCRM Software, or create works that are substantially similar to the copyrighted CreditCRM Software.

41. CreditCRM has notified defendants that they have infringed the copyrights of CreditCRM, in addition to notifying Citron that he has breached the License Agreement, but defendants continue to infringe CreditCRM's copyrights.

42. In addition, in an effort to induce potential purchasers of credit repair software to purchase DisputeSuite's infringing product, defendants have engaged in unfair, unlawful or fraudulent business practices and/or false advertising by, among other things, copying and displaying several identical "buzz" or catch phrases on DisputeSuite's website that CreditCRM has used prominently and continuously – and well prior to DisputeSuite – to advertise and market its CreditCRM Software. These include, but are not limited to:

      a.    "Business in a box;"

      b.    "Credit repair is a game of cat and mouse;"

      c.    "Making you the expert;"

      d.    "3 day live training" (for DisputeSuite Members); and

      e.    "Think Tank of CEOs."

43. Defendants have further engaged in unfair, unlawful or fraudulent business practices and/or false advertising by using the same identical catch phrases prominently and continuously used by CreditCRM to advertise and market CreditCRM Software as part of a conspicuous and transparent plan to confuse potential purchasers of credit repair software into thinking that DisputeSuite's software is actually CreditCRM Software or associated with CreditCRM.

44. Defendants' use of the identical catch phrases used by CreditCRM, as described above, has in fact created confusion in the market place as to the true source and creator of the credit repair software offered by DisputeSuite.

45. CreditCRM is informed and believes, and on that basis alleges, that defendants have further engaged in unfair, unlawful or fraudulent business

practices and/or false advertising by purporting to give legal advice through "webinars" given on DisputeSuite's website, when in fact DisputeSuite's representatives are not licensed attorneys. For example, DisputeSuite advertises on its website that its representatives can advise customers "how to use" certain federal statutes related to credit repair to their advantage, including but not limited to the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the Fair and Accurate Credit Transactions Act, the Truth in Lending Act, and others.

46. By engaging in the above conduct, defendants have also deliberating and intentionally interfered with CreditCRM's prospective economic relations with prospective customers of CreditCRM Software. As a direct and proximate result of defendants' wrongful acts described herein, CreditCRM has suffered losses resulting from defendants' intentional diversion of prospective CreditCRM customers to DisputeSuite's infringing product.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 et seq.)

47. CreditCRM incorporates by reference each and every allegation contained in paragraphs 1 through 46 as if set forth fully herein.

48. CreditCRM is the creator and owner of the copyrights here at issue, specifically the copyrights in the original CreditCRM Software and all derivative works based thereon, and has registered its copyrights with the Register of Copyrights.

49. Defendants have made unauthorized copies of the CreditCRM Software and have used a variety of electronic media and digital devices, including but not limited computers, servers, Internet websites, and other means of online distribution to wrongfully copy, publish, display and distribute

COMPLAINT

CreditCRM's copyrighted CreditCRM Software.

50.     Defendants have violated, *inter alia*, CreditCRM's exclusive rights to reproduce, display and distribute the CreditCRM Software, in violation of the Copyright Act (17 U.S.C. § 101 *et seq.*).

51.     All of defendants' acts of infringement alleged herein were willful, intentional and in total disregard of the rights of CreditCRM.

52.     As a result of defendants' of infringement CreditCRM's exclusive rights under its copyrights, CreditCRM is entitled to relief pursuant to 17 U.S.C. § 504. Such relief includes all damages sustained by CreditCRM in consequence of defendants' infringing acts and all additional profits of defendants resulting from their infringement.

53.     As a result of defendants' of infringement CreditCRM's exclusive rights under its copyrights, CreditCRM is also entitled and to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

54.     Furthermore, by reason of defendants' infringement and continued and threatened infringement, CreditCRM has sustained and will continue to sustain actual, substantial, and irreparable harm, the extent of which cannot be fully ascertained at this time, and which cannot be fully compensated by money. CreditCRM has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, CreditCRM is entitled to temporary, preliminary and permanent injunctive relief enjoining and preventing each defendant, their agents and employees, and all persons acting in concert or participation with defendants, from further infringing CreditCRM's copyrights, and an order requiring each defendant to destroy all copies of the infringing DisputeSuite software made in violation of CreditCRM's copyrights.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition,

### Calif. Bus. & Prof. Code § 17200 *et seq.*)

55.      CreditCRM incorporates by reference each and every allegation contained in paragraphs 1 through 54 as if set forth fully herein.

56.      Defendants have engaged in unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code Sections 17200 *et seq.*, in the conduct described herein, including defendants' infringement of CreditCRM's copyrights in the CreditCRM Software, false and misleading advertising regarding DisputeSuite's credit repair software, and interference with CreditCRM's prospective economic advantage. Defendants' conduct involves a series of acts that are intended to, and have in fact unlawfully injured CreditCRM, for the purpose of advancing defendants' competitive business interests.

57.      Defendants' conduct violates, among other things, the Copyright Act (17 U.S.C. § 101 *et seq.*), California's False Advertising Law (California Business and Professions Code Sections 17500 *et seq.*), and California law, as alleged herein.

58.      As a direct, proximate and foreseeable result of Defendants' conduct described herein, CreditCRM has suffered substantial damages in an amount not less than $1,000,000, including without limitation the loss of in excess of 100 clients who have licensed or purchased defendants' infringing software instead of licensing or purchasing CreditCRM Software, as well as untold harm to CreditCRM's reputation in the marketplace.

59.      CreditCRM is informed and believes, and on that basis alleges, that defendants are continuing to infringe CreditCRM's Software and engage in the unfair, unlawful and fraudulent business practices described herein in an effort to

destroy CreditCRM's business. As a direct and proximate result of defendants' conduct, CreditCRM has suffered irreparable harm. Unless defendants are restrained from the unfair, unlawful and fraudulent business practices described herein, CreditCRM will continue to be irreparably harmed.

60.     CreditCRM seeks injunctive relief under California Business & Professions Code Sections 17200, *et seq.*, to remedy the unfair, unlawful and/or fraudulent business practices described herein. Accordingly, CreditCRM seeks the temporary, preliminary and permanent injunctive relief, as detailed above in paragraph 54.

61.     In addition, CreditCRM seeks restitution and/or disgorgement of all gains, profits and advantages wrongfully obtained by defendants as a result of their unlawful, unfair and fraudulent practices.

## THIRD CLAIM FOR RELIEF

### (False Advertising,

### Calif. Bus. & Prof. Code § 17500 *et seq.*)

62.     CreditCRM incorporates by reference each and every allegation contained in paragraphs 1 through 61 as if set forth fully herein.

63.     CreditCRM is informed and believes, and on that basis alleges, that defendants have engaged in false advertising in violation of California's False Advertising Law (Bus. & Prof. Code § 17500 *et seq.*) by the acts complained of herein, including without limitation, publicly disseminating advertising regarding CreditCRM's products and services that contained false and/or misleading statements that defendants knew or should have known were false or misleading. Among other things, defendants have used certain catch phrases in advertising DisputeSuite's software that are identical to those used prominently and continuously by CreditCRM in a deliberate and misleading attempt to convince potential consumers into believing that defendants' infringing software is

associated with and/or created by CreditCRM

64.     As a direct, proximate and foreseeable result of Defendants' conduct described herein, CreditCRM has suffered substantial damages in an amount not less than $1,000,000, including without limitation the loss of in excess of 100 clients who have licensed or purchased defendants' infringing software instead of licensing or purchasing CreditCRM Software, as well as untold harm to CreditCRM's reputation in the marketplace.

65.     CreditCRM is informed and believes, and on that basis alleges, that Defendants are continuing to make false and misleading statements about DisputeSuite's infringing software product in an effort to destroy CreditCRM's business. As a direct and proximate result of defendants' conduct, CreditCRM has suffered irreparable harm for which it has no adequate remedy at law. Unless defendants are restrained from the false advertising practices described herein, CreditCRM will continue to be irreparably harmed.

66.     Accordingly, CreditCRM seeks temporary, preliminary and permanent injunctive relief, as detailed above in paragraph 54.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract Against Citron)

67.     CreditCRM incorporates by reference each and every allegation contained in paragraphs 1 through 66 as if set forth fully herein.

68.     The License Agreement between CreditCRM and Citron is a binding contract under which Citron agreed, among other things, not to:

        a. use any information obtained from use of the CreditCRM Software in connection with the designing of a similar software product;

        b. share any information about CreditCRM with outside entities regarding the work-flow, design and output of CreditCRM;

COMPLAINT

c. resell any information obtained from CreditCRM or grant access to the CreditCRM Software to any third party reseller;

d. copy, distribute, modify, reverse engineer, or create derivative works based on upon information obtained from CreditCRM, including the CreditCRM Software;

e. sublicense, assign, transfer or grant any permission or license to use, the CreditCRM Software, the License Agreement, or any interest therein.

69.     Except as otherwise excused by law, CreditCRM has performed all conditions, covenants and promises on its part to be performed in accordance with the terms and conditions of the License Agreement.

70.     Beginning sometime after August 28, 2007, and continuing thereafter, Citron breached the License Agreement by (1) disclosing information obtained from his use of the CreditCRM Software to defendant Ryckman and others for the purpose of creating a competing software product substantially similar to the CreditCRM Software; (2) allowing unauthorized third parties, including defendant Ryckman and others, access to the CreditCRM Software, (3) engaging in, and inducing defendant Ryckman and others to engage in, efforts to copy, distribute, modify, reverse engineer, or create derivative works based on upon information obtained from CreditCRM, including the CreditCRM Software; (4) sharing information about CreditCRM's regarding the work-flow, design and output with outside persons, including defendant Ryckman and others; and (5) creating a competing credit repair software that infringed CreditCRM's copyrights in the CreditCRM Software.

71.     As a direct and proximate result of Citron's breach of the contract and CreditCRM has suffered damages in an amount according to proof at trial, but not less than $1,000,000, plus prejudgment interest thereon.

72.     CreditCRM is also entitled to its reasonable attorneys' fees and costs incurred as a result of Citron's breach of the License Agreement.

## FIFTH CLAIM FOR RELIEF

### (Interference with Prospective Economic Relations)

73.     CreditCRM incorporates by reference each and every allegation contained in paragraphs 1 through 72 as if set forth fully herein.

74.     CreditCRM's business success is predicated in part upon building and maintaining relationships with prospective customers interested in establishing their own credit repair business by licensing the CreditCRM Software, including but not limited to bankers, mortgage brokers, real estate agents and other business opportunity seekers. CreditCRM enjoys prospective economic advantage and prospective business relationships with these prospective customers who are seeking to establish their own credit repair business by licensing the CreditCRM Software. Defendants are aware and have knowledge of CreditCRM's prospective economic advantage and prospective business relationships with such customers.

75.     CreditCRM is informed and believes, and on that basis alleges, that defendants interfered with CreditCRM's prospective economic advantage and prospective business relations using wrongful means and for improper purposes, as described herein. Among other things, defendants have created, displayed and distributed competing credit repair software that infringes CreditCRM Software. In addition, defendants have made false and misleading statements in advertising DisputeSuite's infringing product to prospective customers, including bankers, mortgage brokers, real estate agents and other business opportunity seekers with whom CreditCRM has business relationships, knowing that such statements would interfere with CreditCRM's prospective economic advantage and prospective business relationships with such customers.

76.     Defendants engaged in the acts described herein with the deliberate intention of disrupting CreditCRM's prospective economic relationships with its banker, mortgage broker, and real estate agent customers, and with the design and intent of diverting those client relationships to themselves. Defendants knew that interference was certain or substantially certain to occur as a result of its actions, and in fact defendants acted with the intent to disrupt CreditCRM's prospective economic advantage and prospective business relations.

77.     As a direct, proximate and foreseeable result of defendants' actions, CreditCRM has suffered and will continue to suffer damages according to proof at trial, but not less than $1,000,000.

78.     By engaging in the conduct described above, defendants acted with malice, fraud and oppression and in conscious disregard of the rights of CreditCRM, thereby entitling CreditCRM to recover punitive and exemplary damages in an amount to according to proof at trial.

79.     CreditCRM seeks temporary, preliminary and permanent injunctive relief as detailed above in paragraph 54.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Jamison Law Group LTD, d/b/a/ CreditCRM, prays for judgment against defendants as follows:

**AS TO THE FIRST CLAIM FOR RELIEF:**

1. For CreditCRM's damages pursuant to 17 U.S.C. § 504 resulting from defendants' infringement of the CreditCRM Software and all profits of defendants derived from their infringement of the CreditCRM Software;

2. For preliminary and permanent injunctive relief enjoining defendants and all persons acting in concert with them from reproducing, displaying, distributing, advertising, promoting, offering for sale or transfer and/or

selling or transferring any works that are substantially similar to CreditCRM's copyrighted CreditCRM Software and/or any other works that violate CreditCRM's copyrights in and to the CreditCRM Software;

3. For an order pursuant to 17 U.S.C. § 503 impounding and reasonably disposing of all copies of defendants' infringing software, in whatever medium including all electronic media, computers and digital devices in the possession or control of defendants;

4. For CreditCRM's reasonable attorneys' fees and costs; and

5. For such other and further relief as the Court deems just and proper.

**AS TO THE SECOND CLAIM FOR RELIEF:**

1. For temporary, preliminary and permanent injunctive relief as described in paragraph 54, above;

2. For restitution and/or disgorgement of all gains, profits, and advantages derived by defendants as a result of their unlawful, unfair and fraudulent practices as described herein;

3. For CreditCRM's reasonable attorneys' fees and costs;

4. For such other and further relief as the Court deems just and proper.

**AS TO THE THIRD CLAIM FOR RELIEF:**

1. For damages in an amount according to proof at trial, but not less than $1,000,000.

2. For temporary, preliminary and permanent injunctive relief as described in paragraph 54, above;

3. For CreditCRM's reasonable attorneys' fees and costs; and

4. For such other and further relief as the Court deems just and proper.

COMPLAINT

## AS TO THE FOURTH CLAIM FOR RELIEF:

     1.    For damages in an amount according to proof at trial, but not less than $1,000,000;

     2.    For CreditCRM's reasonable attorneys' fees and costs; and

     3.    For such other and further relief as the Court deems just and proper.

## AS TO THE FIFTH CLAIM FOR RELIEF:

     1.    For damages in an amount according to proof at trial, but not less than $1,000,000;

     2.    For punitive damages in an amount according to proof at trial;

     3.    For temporary, preliminary and permanent injunctive relief as described in paragraph 54 above;

     4.    For costs of suit; and

     5.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), CreditCRM hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

Dated: February 10, 2009          J.J. Little & ASSOCIATES

By:     _____

James J. Little
Attorneys for Plaintiff
Jamison Law Group LTD, a Nevada
corporation, d/b/a CreditCRM

COMPLAINT

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all matters that are triable to a jury.

Respectfully Submitted,

Dated: February 10, 2009

J.J. Little & ASSOCIATES

By:

James J. Little
Attorneys for Plaintiff
Jamison Law Group LTD, a Nevada corporation, d/b/a CreditCRM

# EXHIBIT A

## Claim Detail

**[<< Back]**

Claim Id: 1-2KHOE1          Case #: 1-155349431

Title: CreditCRM Credit Repair Software Suite

### All Titles

1 - 1 of 1

| Title of Work ... | Type ... |
|---|---|
| CreditCRM Credit Repair Software Suite | Title of work being registered |

### Publication/Completion

1 - 1 of 1

| Published Work | Year Created | Publication Date | Nation of First Publication | ISN Type | IS Number |
|---|---|---|---|---|---|
| Yes | 2008 | 5/1/2006 | United States | | |

### Authors & Contributions (TX)

1 - 1 of 1

| Name | Organization Name | Doing business as | Work For Hire | Anonymous | Text | Art | Photo | Editing | Translation | Compilation | Computer Program | Created Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jamison Group | CreditCRM.com | Yes | | N | | | | | | ✔ | |

### Claimants

1 - 2 of 2

| Name | Organization Name | Transfer Statement | Transfer Stmt Other | Address |
|---|---|---|---|---|
| | Jamison Group | | | 11500 W Olympic Blvd, #360, Los Angeles, CA, 90064, United States |
| | Jamison Group | | | 11500 W Olympic Blvd, #360, Los Angeles, CA, 90064, United States |

### Claim Limitations review (TX)

| Material Excluded | New Material Included | Previous Registration |
|---|---|---|
| Text | Text | 1st Prev. Reg. # |
| Artwork | Editing | Year |
| Photograph | Artwork | 2nd Prev. Reg. # |
| Computer Program | Translation | Year |
| Other | Compilation | |
| | Photographs | |
| | Computer Program | |
| | Other | |

### Rights & Permissions

| | |
|---|---|
| First Name: Edward | Organization Name: Jamison Law Group |
| Middle Name: | Address 1: 11500 W Olympic Blvd |
| Last Name: Jamison | Address 2: suite 360 |
| Email: edward1@edwardjamison.com | City: Los Angeles |
| Phone: (310) 622-9510 | State: CA |
| Alternate Phone: (310) 278-3503 | Postal Code: 90064 |
| | Country: United States |

### Correspondent

| | |
|---|---|
| First Name: Edward | Organization Name: Jamison Law Group |
| Middle Name: | Address 1: 11500 W Olympic Blvd |
| Last Name: Jamison | Address 2: suite 360 |
| Email: edward1@edwardjamison.com | City: Los Angeles |
| Phone: (310) 622-9510 | State: CA |
| Alternate Phone: (310) 278-3503 | Postal Code: 90064 |
| Fax: (424) 702-3244 | Country: United States |

### Mail Certificate

| | |
|---|---|
| First Name: Edward | Organization Name: Jamison Law Group |
| Middle Name: | Address 1: 11500 W Olympic Blvd |
| Last Name: Jamison | Address 2: suite 360 |
| | City: Los Angeles |
| | State: CA |
| | Postal Code: 90064 |
| | Country: United States |

### Certification

| | |
|---|---|
| Name: | Edward Jamison |
| Certified: | ✔ |
| Special Handling: | ✔ |
| Applicant's Internal Tracking Number: | |
| Note to Copyright Office: | |
| Upload Electronically | ✔ |
| Send By Mail | |

James J. Little (SBN123373 )
J.J. Little & Associates
1516 South Bundy Drive, Suite 312
Los Angeles, California 90025
Tel: (310) 442-8310
Fax: (310) 442-8304

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jamison Law Group, LTD, a Nevada corporation, d/b/a CreditCRM <br><br> PLAINTIFF(S) <br> v. <br> DisputeSuite.com LLC, a Florida Limited Liability Company, Michael Citron, an individual, Brett Ryckman, an individual, and DOES 1 through 20, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV09-1130**MRP (CTx) <br><br><br> **SUMMONS** |

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __James J. Little_____, whose address is _1516 South Bundy Drive, Suite 312, Los Angeles, California 90025_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____FEB 1 7 2009_____

By: _Natalie Gangonia_
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

James J. Little (SBN123373 )
J.J. Little & Associates
1516 South Bundy Drive, Suite 312
Los Angeles, California 90025
Tel: (310) 442-8310
Fax: (310) 442-8304

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jamison Law Group, LTD, a Nevada corporation, d/b/a CreditCRM<br><br>PLAINTIFF(S)<br>v.<br>DisputeSuite.com LLC, a Florida Limited Liability Company, Michael Citron, an individual, Brett Ryckman, an individual, and DOES 1 through 20,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09-1130MRP** (CTx)<br><br><br>**SUMMONS** |

TO: DEFENDANT(S): _____ . _____ _____

     A lawsuit has been filed against you.

     Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _James J. Little_ _____, whose address is _1516 South Bundy Drive, Suite 312, Los Angeles, California 90025_ _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                          Clerk, U.S. District Court

Dated: _____ FEB 1 7 2009 _____       By: **NATALIE LONGORIA**
                                       Deputy Clerk

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)]._

1198

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> Jamison Law Group, LTD, a Nevada corporation, d/b/a CreditCRM | DEFENDANTS <br> DisputeSuite.com LLC, a Florida Limited Liability Company, Michael Citron, an individual, Brett Ryckman, an individual, and DOES 1 through 20, |
|---|---|
| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): <br> Los Angeles County, California | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> J.J. Little & Associate <br> 1516 South Bundy Drive, Suite 312 <br> Los Angeles, California 90025 | Attorneys (If Known) |

| II. BASIS OF JURISDICTION (Place an X in one box only.) | III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.) |
|---|---|

| | | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No    ☑ MONEY DEMANDED IN COMPLAINT: $ 1,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS <br> PERSONAL INJURY | TORTS <br> PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 371 Truth in Lending | Vacate Sentence | Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 380 Other Personal | Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Property Damage | ☐ 530 General | Relations |
| Rates/etc. | ☐ 150 Recovery of | Slander | ☐ 385 Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation | Overpayment & | ☐ 330 Fed. Employers' | Product Liability | ☐ 540 Mandamus/ | Reporting & |
| ☐ 470 Racketeer Influenced | Enforcement of | Liability | BANKRUPTCY | Other | Disclosure Act |
| and Corrupt | Judgment | ☐ 340 Marine | ☐ 422 Appeal 28 USC | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | ☐ 423 Withdrawal 28 | FORFEITURE / | Litigation |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | USC 157 | PENALTY | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle | CIVIL RIGHTS | ☐ 610 Agriculture | Security Act |
| ☐ 850 Securities/Commodities | ☐ 153 Recovery of | Product Liability | ☐ 441 Voting | ☐ 620 Other Food & | PROPERTY RIGHTS |
| /Exchange | Overpayment of | ☐ 360 Other Personal | ☐ 442 Employment | Drug | ☑ 820 Copyrights |
| ☐ 875 Customer Challenge 12 | Veteran's Benefits | Injury | ☐ 443 Housing/Acco- | ☐ 625 Drug Related | ☐ 830 Patent |
| USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- | mmodations | Seizure of | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | Med Malpractice | ☐ 444 Welfare | Property 21 USC | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 445 American with | 881 | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization | Liability | Product Liability | Disabilities - | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal | Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | REAL PROPERTY | Injury Product | ☐ 446 American with | ☐ 650 Airline Regs | (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | Liability | Disabilities - | ☐ 660 Occupational | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | Other | Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil | ☐ 690 Other | FEDERAL TAX SUITS |
| nation Under Equal | ☐ 240 Torts to Land | | Rights | | ☐ 870 Taxes (U.S. Plaintiff |
| Access to Justice | ☐ 245 Tort Product Liability | | | | or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 |
| State Statutes | | | | | USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number:  CV09-1130

CV-71 (07/05)                                       CIVIL COVER SHEET                                       Page 1 of 2

## AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
  Jamison Law Group LTD -- Los Angeles County, California

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant
  DisputeSuite.com, LLC - Florida
  Michael Citron -- Florida
  Brett Rykman -- Florida

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
  All claims arose in Los Angeles County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____    **Date**    February 13, 2009

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended, plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Mariana P. Pfaelzer and the assigned discovery Magistrate Judge is Carolyn Turchin.

The case number on all documents filed with the Court should read as follows:

## CV09- 1130 MRP (CTx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

The United States District Judge assigned to this case will review all filed discovery motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery related motions to the Magistrate Judge for hearing and determination

=======================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
  312 N. Spring St., Rm. G-8
  Los Angeles, CA 90012

[ ] **Southern Division**
  411 West Fourth St., Rm. 1-053
  Santa Ana, CA 92701-4516

[ ] **Eastern Division**
  3470 Twelfth St., Rm. 134
  Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.